STATE of Wisconsin, Plaintiff-Appellant,

v.

Keith M. CAREY, Defendant-Respondent.†

Court of Appeals

*Nos. 03–1578–CR through 03–1583–CR. Submitted on briefs February 5, 2004.—Decided March 31, 2004.*

2004 WI App 83

(Also reported in 679 N.W.2d 910.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Sally L. Wellman*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Paul G. LaZotte*, assistant state public defender.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J.   The State appeals from an order denying its motion for redetermination of Keith M. Carey's competency to stand trial. The State argues that the circuit erred in concluding that it did not have the authority to order Carey to undergo a competency evaluation under the language of WIS. STAT. § 971.14(6)(a) and (d) (2001–02).[1] We agree and reverse and remand for proceedings consistent with this opinion.

¶ 2.   The relevant facts underlying this appeal are not in dispute. Carey was charged with several misdemeanors and a number of serious felonies, including two counts of arson, second-degree reckless endangerment, and felony bail jumping.[2] Carey's competency to stand trial was questioned and the circuit court ordered a competency evaluation in August 2002. A staff psychiatrist at the Winnebago Mental Health Institute examined Carey. The psychiatrist concluded that while Carey suffered from "no major mental illness," he was nonetheless incompetent to stand trial due to "a long history of a learning disability" that caused "difficulties understanding legal concepts related to his case." He further determined that Carey did not have "a treatable psychiatric illness" and he was "unlikely to regain competency within the statutory limits."

¶ 3.   After receiving a copy of the psychiatrist's report, the State filed a motion asking that Carey also "be examined by a psychologist to determine the extent of the defendant's learning disability and whether or

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Cases 03–1578, 03–1579, 03–1580, 03–1581, 03–1582 and 03–1583 were consolidated for purposes of this appeal.

not it renders him incompetent to stand trial and whether it renders him unlikely to regain competence within the statutory time limits." The court granted the motion and ordered that Carey submit to an examination by "a qualified psychologist from Winnebago Mental Health [Institution]." This exam apparently took place and was submitted to the court in November.

¶ 4. At a hearing held in December, the circuit court, relying on the two reports, found that Carey was incompetent to stand trial and not likely to regain competency within one year. The court then suspended the criminal proceedings. At the hearing, the prosecutor filed a statement meeting the requirements of WIS. STAT. § 51.15, the statute providing for emergency detention, and Carey was taken into custody and delivered to an approved public treatment facility.

¶ 5. Subsequently, a different circuit court held a probable cause hearing pursuant to WIS. STAT. § 51.20(7). At the probable cause hearing, the court invoked the provisions of § 51.20(7)(d)1, which give the court the authority to convert the proceeding to a WIS. STAT. ch. 55 proceeding. The court appointed a temporary guardian, ordered a temporary protective placement and proceeded as if a petition had been made for guardianship and protective placement or services. Thereafter, Dr. Daniel Knoedler notified the prosecutor that in his opinion Carey was not an appropriate person for a commitment because he is not mentally retarded, the institution intended to discharge Carey and a permanent guardianship or protective placement under ch. 55 would not be sought.

¶ 6. Because Carey was about to be released from his civil commitment and Dr. Knoedler's evaluation indicated that Carey might be competent to stand trial, the State filed a motion for redetermination of Carey's

competency. At the motions hearing held on January 10, 2003, the State argued that the court could order Carey to undergo a new competency examination under WIS. STAT. § 971.14(6)(d). Alternatively, the State maintained that the court could order a redetermination of Carey's competency to stand trial pursuant to § 971.14(6)(a). Carey countered that his case did not strictly fall within the precise language of either provision and therefore the circuit court did not have statutory authority to ever order a redetermination of Carey's competency to stand trial. The circuit court agreed with Carey and ruled that it did not have the authority to order a competency evaluation under the language of the various provisions of § 971.14.

¶ 7. The sole issue before us on appeal is whether the circuit court erred in concluding that it did not have the authority to require Carey to undergo a redetermination of his competency to stand trial. As it did before the circuit court, the State contends that such authority can be found in WIS. STAT. § 971.14(6)(a) and (d).

■■■■■

¶ 8. Statutory construction is a question of law that we review de novo. *State v. Leitner*, 2002 WI 77, ¶ 16, 253 Wis. 2d 449, 646 N.W.2d 341. "When interpreting a statute, our purpose is to discern legislative intent. To this end, we look first to the language of the statute as the best indication of legislative intent. Additionally, we may examine the statute's context and history." *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI 150, ¶ 13, 267 Wis. 2d 158, 672 N.W.2d 275 (citation omitted). Further, we will reject a literal reading of a statute that would lead to an absurd or unreasonable result that does not reflect the legislature's intent. *State v. Jennings*, 2003 WI 10, ¶ 11, 259 Wis. 2d 523, 657 N.W.2d 393. In interpreting a

statute, we are to presume that "the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute." *Nunez ex rel. Poulos v. Am. Family Mut. Ins.*, 2003 WI App 35, ¶ 24, 260 Wis. 2d 377, 659 N.W.2d 171, *review denied*, 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (Wis. Apr. 22, 2003) (No. 02–1041) (citation omitted).

¶ 9. The statutory scheme for the transition between civil commitment or protective placement and the criminal courts set forth in WIS. STAT. § 971.14 is complex. We, therefore, will begin at the beginning.

¶ 10. Pursuant to WIS. STAT. § 971.14(5)(a), if the court finds that a defendant is not competent, but is likely to become competent, it may commit the defendant to the custody of the department of health and family services for a period of time not to exceed twelve months or the maximum sentence for the most serious offense with which the defendant is charged, whichever is less. In this case, however, the court determined that Carey was incompetent and not likely to become competent within the allotted time. Therefore, Carey could not be committed pursuant to subsec. (5)(a). Rather, the court's finding triggered the provisions of subsec. (6)(a) and (b). Subsection (6)(a) and (b) provide, in relevant part:

> **(6)** DISCHARGE; CIVIL PROCEEDINGS. (a) If the court determines that it is unlikely that the defendant will become competent within the remaining commitment period, it shall discharge the defendant from the commitment and release him or her, except as provided in par. (b). The court may order the defendant to appear in court at specified intervals for redetermination of his or her competency to proceed.
>
> (b) When the court discharges a defendant from commitment under par. (a), it may order that the

defendant be taken immediately into custody by a law enforcement official and promptly delivered to a facility specified in s. 51.15(2), an approved public treatment facility under s. 51.45(2)(c) or an appropriate medical or protective placement facility. Thereafter, detention of the defendant shall be governed by s. 51.15, 51.45(11) or 55.06(11), as appropriate. The district attorney or corporation counsel may prepare a statement meeting the requirements of s. 51.15(4) or (5), 51.45(13)(a) or 55.06(11) based on the allegations of the criminal complaint and the evidence in the case. This statement shall be given to the director of the facility to which the defendant is delivered and filed with the branch of circuit court assigned to exercise criminal jurisdiction in the county in which the criminal charges are pending where it shall suffice, without corroboration by other petitioners, as a petition for commitment under s. 51.20, 51.45(13) or 55.06(2).

Thus, when a circuit court discharges a defendant from a commitment under § 971.14(6)(a), the circuit court, pursuant to § 971.14(6)(b), may immediately order that the defendant be taken into custody and held pursuant to WIS. STAT. ch. 51. Thereafter, further proceedings under ch. 51 or WIS. STAT. ch. 55 may occur. Here, after the court discharged Carey, the State invoked § 971.14(6)(b) by seeking and accomplishing Carey's detention under ch. 51, and later, under ch. 55.

¶ 11. WISCONSIN STAT. § 971.14(6)(c) provides:

(c) If a person is committed under s. 51.20 pursuant to a petition under par. (b), the county department under s. 51.42 or 51.437 to whose care and custody the person is committed shall notify the court which discharged the person under par. (a), the district attorney for the county in which that court is located and the person's attorney of record in the prior criminal proceeding at least 14 days prior to transferring or discharging the defendant from an inpatient treatment

facility and at least 14 days prior to the expiration of the order of commitment or any subsequent consecutive order, unless the county department or the department of health and family services has applied for an extension.

Here, Dr. Knoedler, the evaluator, notified the prosecutor that Carey was not an appropriate candidate for commitment because he was not mentally retarded, he would be released from his temporary placement and a permanent guardianship and protective placement under Wis. Stat. ch. 55 would not be sought. It was this notification that prompted the State's request for reevaluation pursuant to § 971.14(6)(d).

■

¶ 12. Wisconsin Stat. § 971.14(6)(d) provides:

(d) Counsel who have received notice under par. (c) or who otherwise obtain information that a defendant discharged under par. (a) may have become competent may move the court to order that the defendant undergo a competency examination under sub. (2). If the court so orders, a report shall be filed under sub. (3) and a hearing held under sub. (4). If the court determines that the defendant is competent, the criminal proceeding shall be resumed. If the court determines that the defendant is not competent, it shall release him or her but may impose such reasonable nonmonetary conditions as will protect the public and enable the court and district attorney to discover whether the person subsequently becomes competent.

Thus, the State, once it learns that a defendant discharged under subsec. (6)(a) may become competent, may move the court to order the defendant to undergo a reevaluation of his or her competency to stand trial. This is precisely what happened here. The second sentence of subsec. (6)(a) grants the court the power to order the reevaluation of the competency of the defen-

dant when the defendant is released from custody. Accordingly, in this case, the circuit court had the authority by virtue of subsec: (6)(d) and the second sentence in subsec. (6)(a) to order the competency examination.

¶ 13.  Carey argues that WIS. STAT. § 971.14(6)(d) does not provide authority for the court to order him to undergo a competency evaluation because his commitment and discharge were not accomplished pursuant to subsec. (6)(a). Instead, Carey says that the suspension of the criminal proceedings and his discharge occurred pursuant to subsec. (4)(d)[3] and his commitment occurred pursuant to subsec. (6)(b).

¶ 14.  While Carey is technically right that the circuit court committed him under WIS. STAT. § 971.14(6)(b), it is subsec. (6)(a) that specifically envisions and authorizes the court to order a civil commitment under subsec. (6)(b). Furthermore, although *Billy Jo W. v. Metro*, 182 Wis. 2d 616, 645, 514 N.W.2d 707 (1994), is not directly on point, our supreme court's comments in that case concerning the purposes of § 971.14 are instructive. There, our supreme court recognized that the legislature had interwoven the provisions of WIS. STAT. chs. 51 and 971 to accommodate the constitutional protections against perpetual, unjustified confinement on the one hand and the interests of the public in prosecuting criminal defendants on the other hand. *Billy Jo W.*, 182 Wis. 2d at 645. Thus, in furtherance of the latter, § 971.14(6) provides that the criminal court retains jurisdiction over the defendant,

---

[3] WISCONSIN STAT. § 971.14(4)(d) provides that if the court determines that the defendant is not competent and not likely to become competent within the time period provided in subsec. (5)(a), the proceedings shall be suspended and the defendant released, except as provided in subsec. (6)(b).

who can be prosecuted once he or she regains competency. *Billy Jo W.*, 182 Wis. 2d at 644–45 (citing *State ex rel. Porter v. Wolke*, 80 Wis. 2d 197, 204, 257 N.W.2d 881 (1977)). This both ensures that a competent defendant does not escape the consequences of his or her criminal behavior and protects the public from a potentially dangerous competent individual.

¶ 15.   Carey's reading of the statute, taken to its logical conclusion, would mean that the criminal proceedings for a person who is found incompetent and unlikely to become competent in the foreseeable future, but who also does not meet the standards for involuntary commitment or protective placement under Wis. Stat. chs. 51 and 55, will always remain suspended and open. The defendant will be released into the community and the court will never have the authority to order a reevaluation of the defendant's competency to stand trial. This is so regardless of whether there is evidence demonstrating the defendant's competence. Given that the purpose of the statute, in part, is to protect the interest of the public in prosecuting criminal defendants, Carey's restrictive reading of the statute is not only highly unreasonable, it also runs contrary to the statute's purposes. We, therefore, hold that the circuit court had the authority under Wis. Stat. § 971.14(6) to order a redetermination of Carey's competency to stand trial and we remand the matter for further proceedings.

*By the Court.*—Order reversed and cause remanded.