In the INTEREST OF A.L.,
a person under the age of 17:

STATE of Wisconsin, Petitioner-Appellant,

v.

A. L., Respondent-Respondent.†

Court of Appeals

*No. 2016AP880. Submitted on briefs August 21, 2017.
Decided October 31, 2017.*

2017 WI App 72

(Also reported in 904 N.W.2d 543.)

† Petition for Review filed.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John T. Chisholm*, Milwaukee County District Attorney, and *John M. Stoiber*, Assistant District Attorney of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Jorge R. Fragoso*, Assistant State Public Defender of Milwaukee.

Before Brennan, P.J., Brash and Dugan, JJ.

¶ 1. BRASH, J. We granted the State's petition for leave to appeal a nonfinal order[1] of the trial court in which it denied the State's request for a re-evaluation of a juvenile's competency in a suspended delinquency matter. The trial court determined that WIS. STAT. § 938.30(5)(d) did not permit such re-evaluation; instead, the trial court concluded that a juvenile delinquency petition remains suspended in cases where, as

---

[1] This court granted the leave to appeal the order on June 6, 2016. *See* WIS. STAT. Rule § 809.50(3) (2015–16). All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

723

here, the juvenile was found incompetent and unlikely to regain competency within the statutory time frame.

¶ 2. Upon review, we find that WIS. STAT. § 938.30(5)(d) is ambiguous. In our interpretation of the statute, we find that the legislature did not intend for the trial court to lose competency over the suspended juvenile proceedings under these circumstances. Consequently, we find no inferred requirement that the suspended petition be dismissed with prejudice, as suggested by A.L.

¶ 3. In the following opinion, we address the narrow issue of whether WIS. STAT. § 938.30(5)(d) permits the possibility of re-evaluation of competence. We conclude that the statute does permit re-evaluation under the circumstances described in this case. We therefore reverse and remand this matter to the trial court for further proceedings consistent with this decision.

### BACKGROUND

¶ 4. The delinquency petition at issue stems from an incident that occurred on November 21, 2012, when A.L. had just turned fifteen years old. Several officers from the Milwaukee Police Department were dispatched to a residence located at 2919 West Vliet Street, Milwaukee, to investigate a homicide. The officers found the victim, A.B., lying on the front porch of the residence with a stab wound to his chest. He was pronounced dead at the scene.

¶ 5. Initially, police officers were told by people at the residence that A.B. had been "jumped at the front door." The police obtained consent to search the residence from the tenant, A.L.'s mother. During the search police recovered a silver metal knife from the

kitchen sink. Subsequently, A.L. admitted to an officer that he had stabbed A.B., who was his cousin, after observing A.B. violently fighting with A.L.'s brother.

¶ 6. A delinquency petition was then filed on November 27, 2012, charging A.L. with second-degree reckless homicide. At a plea hearing held on December 6, 2012, A.L.'s defense counsel challenged his competency. The trial court suspended the proceedings and ordered both medical and psychological evaluations.

¶ 7. A psychological evaluation of A.L. in early January 2013 found that A.L. was not competent. The psychologist stated that "[A.L.'s] self-presentation and behavior were consistent with that of an elementary school-age child" and that he displayed "[q]uestionable judgment" during the evaluation. Furthermore, A.L. did not appear to understand the charge against him or the proceedings related to it. The psychologist also noted A.L.'s "substantial roster of psychoactive medications." Ultimately, she recommended that A.L. be recognized as "lacking [the] mental competency to proceed," and further, because his "deficits" were due to an intellectual disability as well as mental illness for which he was already receiving treatment, she did not believe that there were "any interventions available that would facilitate his attainment of mental competency within the statutory time limits."

¶ 8. A second psychological evaluation performed by a different psychologist in late January 2013 also found A.L. not competent, finding him to be "substantially lacking in mental capacity," and that his condition was "static" in that the psychologist "would not see an ability to educate him to the point where competency would be established." Based on those evaluations, the trial court on February 5, 2013, found

A.L. not competent to proceed and not likely to regain competency within the statutory time frame.

¶ 9. The statutory time frame to which the trial court referred is set forth at WIS. STAT. § 938.30(5)(e). It describes the procedure trial courts are to follow in circumstances where a juvenile is found not competent to proceed but likely to become competent "within 12 months or within the time period of the maximum sentence that may be imposed on an adult for the most serious delinquent act with which the juvenile is charged, whichever is less." *Id.* Problematically, in this case A.L. was found *unlikely* to become competent within those time constraints.

¶ 10. Nevertheless, the trial court[2] suspended the delinquency proceedings against A.L. and entered a juvenile in need of protective services ("JIPS") order on March 28, 2013. A.L. was then placed in a residential treatment center. The JIPS order was extended for an additional year, eventually expiring on March 28, 2015.

¶ 11. Subsequently, A.L. faced charges for two other incidents: (1) a June 2014 juvenile delinquency petition filed for criminal damage to property; and (2) a December 2014 charge for battery, criminal damage to property, and disorderly conduct, for which A.L. was charged as an adult because the incident occurred after he had turned seventeen years old.

¶ 12. With regard to the juvenile delinquency petition of June 2014, A.L.'s defense counsel again raised the issue of competency, and A.L. was again found not competent and unlikely to regain competency within the one-year statutory time frame of WIS.

___

[2] At this time, the case was before the Honorable Mark A. Sanders.

STAT. § 938.30(5)(e). Therefore, that juvenile prosecution was suspended as well, and another JIPS order was entered on October 21, 2014, with an expiration date of October 17, 2015.

¶ 13. However, in the adult criminal proceedings that commenced in December 2014,[3] while A.L. was again initially found not competent to proceed, he was found *likely* to regain competency. A.L. was then sent to the Mendota Mental Health Facility in March 2015 for competency remediation and, in May 2015, a doctor there found that A.L. was competent. A.L. did not challenge this competency finding. He pled guilty to the battery and criminal damage to property charges; the disorderly conduct charge was dismissed and read in. A.L. was sentenced in August 2015 on those charges.

¶ 14. As a result of the competency finding in the adult criminal proceeding, the State requested a re-evaluation of A.L. for the juvenile delinquency petition regarding the criminal damage to property charge that had been filed in June 2014. Another doctor examined A.L., and he was again found competent. A.L. challenged this finding, but the trial court[4] agreed with the doctor and found A.L. competent in November 2015. The prosecution of that delinquency petition was then resumed.

¶ 15. Subsequently, the State, on December 17, 2015, filed a motion to recall the juvenile delinquency petition relating to the charge of second-degree reckless homicide, again for the reconsideration of the

---

[3] There are no issues relating to the adult criminal proceedings that are before this court.

[4] This ruling was made by the Honorable Michael J. Dwyer.

competency of A.L. However, a different trial court[5] found that it had no authority to grant the motion. The court stated that under these circumstances—where the juvenile is found not competent and *unlikely* to regain competency—the relevant statute, WIS. STAT. § 938.30(5), is silent as to a procedure for reinstating the suspended proceedings. As a result, this case remains suspended. This permissive appeal by the State follows.

### DISCUSSION

¶ 16. Chapter 938 of the Wisconsin Statutes, referred to as the Juvenile Justice Code, governs the procedures for "dealing with the problem of juvenile delinquency." WIS. STAT. § 938.01(2). The subsection at issue, WIS. STAT. § 938.30(5), outlines the proper procedures to follow in cases where "there is probable cause to believe that the juvenile has committed the alleged offense and if there is reason to doubt the juvenile's competency to proceed." WIS. STAT. § 938.30(5)(a). If the court finds that the juvenile is not competent to proceed, it "shall suspend proceedings on the petition" and either: (1) determine whether the juvenile meets the requisite conditions for involuntary commitment for treatment under WIS. STAT. § 51.20; or (2) order the filing of a JIPS petition. WIS. STAT. § 938.30(5)(d)1–2. The statute is silent as to what ultimately becomes of the suspended delinquency petition.

¶ 17. The next paragraph, WIS. STAT. § 938.30(5)(e), explains the procedures to be followed in cases where the juvenile is found not competent to proceed but is found likely to become competent to

---

[5] This ruling was made by the Honorable T. Christopher Dee, successor judge to Judge Dwyer.

proceed "within 12 months or within the time period of the maximum sentence that may be imposed on an adult for the most serious delinquent act with which the juvenile is charged, whichever is less." WIS. STAT. § 938.30(5)(e)1. In those cases, the statute provides that the juvenile be periodically re-evaluated to determine when the juvenile has achieved competency. *Id.* Once that occurs, the commitment or JIPS order is terminated, and the delinquency proceedings are resumed. WIS. STAT. § 938.30(5)(e)2.

¶ 18.    Yet, the statute provides no guidance as to a particular procedure to follow in cases where the juvenile is found not competent and unlikely to regain competency, as is the case here. In fact, the statute is completely silent with regard to this possibility. For that reason, the trial court determined that it had lost competency over A.L.'s juvenile delinquency petition relating to the second-degree reckless homicide charge once the corresponding JIPS order had expired, because there is no mechanism under WIS. STAT. § 938.30(5)(d), or anywhere in subsection (5), to resume the proceedings and revisit the ruling on a juvenile's competency. As a result, this would essentially leave A.L.'s case suspended indefinitely.

¶ 19.    The State agrees that under the statute as written, A.L.'s case is indefinitely suspended; still, the State maintains that the trial court did not lose competency to proceed with the juvenile delinquency petition. Instead, the State asserts that WIS. STAT. § 938.30(5) is ambiguous and can be interpreted to authorize the trial court to revisit A.L.'s competency.[6]

---

[6] Alternatively, the State argues that it is within the trial court's inherent authority to order a re-evaluation of A.L.'s

¶ 20. In contrast, A.L. agrees with the trial court's determination that it lacks the authority to resume the juvenile delinquency proceedings. He further contends that the trial court has no inherent power to order that the case be resumed. A.L. therefore asserts that the juvenile delinquency petition must be dismissed with prejudice.

■■■

¶ 21. Therefore, the issue before this court involves the interpretation of WIS. STAT. § 938.30(5). The interpretation of a statute is "a question of law that we review *de novo*." *State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 741 N.W.2d 488. This analysis should "focus primarily on the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Thus, where "the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.*, ¶ 45 (citation and internal quotations marks omitted).

■■■

¶ 22. A statute will be deemed to be ambiguous, however, "if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47. WISCONSIN STAT. § 938.30(5)(d) certainly meets that criteria, in that its silence on the proper procedure to follow in cases where a juvenile is found not competent and unlikely to regain competency allows for different reasonable interpretations. Therefore, to interpret the statute we may look to "extrinsic aids such as the statute's history, purpose, scope and context to discern the intent of the legislature." *Peters*

competency; however, because we base our decision on an interpretation of WIS. STAT. § 938.30(5) due to its ambiguity, we do not reach this argument.

*v. Menard, Inc.*, 224 Wis. 2d 174, 185, 589 N.W.2d 395 (1999). Still, statutory language is to be "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 23.  We begin by noting that not only is there no provision under WIS. STAT. § 938.30(5)(d) that provides a definitive procedure for juveniles found not competent and unlikely to regain competency, there also is no guidance under § 938.30(5)(e) for cases where a juvenile is found not competent and likely to regain competency within the following twelve month period, but fails to do so. Thus, in *every* case where a juvenile is found not competent, the delinquency case is indefinitely suspended because there is simply no guarantee that a juvenile will regain competency. The only distinction between a juvenile who is likely to regain competency as opposed to one who is found unlikely to regain competency is that the legislature mandated periodic re-evaluations in cases where the juvenile is found likely to regain competency; it provided no such requirement in cases where the juvenile is found unlikely to regain competence. *See id.* In short, there is no procedure set forth in the statute for resolving a delinquency petition for a juvenile who never regains competency, whether he or she was expected to or not. Additionally, there is no directive for resolving the suspended delinquency petition in these situations, such as dismissing the petition or resuming prosecution under certain circumstances.

¶ 24.  This is not the first time an issue has been raised relating to the lack of guidance in the statutes regarding juveniles who are found not competent. In

1993, prior to the inclusion of the Juvenile Justice Code at Wis. Stat. ch. 938, the competency of children who were alleged to have committed a criminal offense was addressed in the Children's Code, set forth in Wis. Stat. ch. 48. The Honorable Mel Flanagan brought to the attention of the state legislature a "gaping hole" in Wis. Stat. § 48.13 (1991–92). The statute authorized the trial courts' jurisdiction for children in need of protective services (CHIPS) for children found not mentally responsible for their actions, but not for cases where a child was found not competent to proceed. *See* Wis. Stat. § 48.13(14) (1991–92). A provision to include CHIPS jurisdiction under the latter circumstances was then added to the statute. Wis. Stat. § 48.13(14) (1993–94).

¶ 25. In addition to making the revisions suggested by Judge Flanagan, the drafting attorney at the Legislative Reference Bureau (LRB) noted that the Children's Code statutes relating to competency, as written at the time, "sort of 'drop[ped] the ball' procedurally" in their failure to provide direction for cases where children are found not competent to proceed. Thus, the LRB drafting attorney made further revisions to the Children's Code by incorporating "the most important provisions of [Wis. Stat. §] 971.14," the statute that provides proper procedures for adults charged with crimes who are found not competent to proceed. These revisions were made to Wis. Stat. §§ 48.295(2) and 48.30(5) (1993–94), which were later renumbered under the Juvenile Justice Code as Wis. Stat. § 938.295(2), the section that authorizes the court to order a psychological evaluation when a juvenile's competency is challenged, and Wis. Stat. § 938.30(5), the section at issue here.

¶ 26. We note this legislative history because it is permitted extrinsic information that may be reviewed

in analyzing an ambiguous statute. *See Peters*, 224 Wis. 2d at 185. Furthermore, we find it helpful and constructive to our analysis, particularly the LRB attorney's reference to the correlating statute relating to adult competency in criminal proceedings. As the legislature did, we turn to that statute, WIS. STAT. § 971.14, for guidance.

¶ 27. WISCONSIN STAT. § 971.14, which outlines competency proceedings for adults charged in criminal court, was previously analyzed by this court in *State v. Carey*, 2004 WI App 83, 272 Wis. 2d 697, 679 N.W.2d 910. As we aptly noted in that decision, "[t]he statutory scheme for the transition between civil commitment or protective placement and the criminal courts set forth in [] § 971.14 is complex." *Carey*, 272 Wis. 2d 697, ¶ 9. In *Carey*, we reviewed the trial court's ruling that it did not have the authority to order a re-evaluation of Carey's competency. *Id.*, ¶ 7. After being charged with several felonies, Carey had been found incompetent and unlikely to regain competency. *Id.*, ¶¶ 2–4. The trial court suspended the criminal proceedings and ordered that Carey be retained in emergency detention pursuant to WIS. STAT. § 51.15. *Carey*, 272 Wis. 2d 697, ¶ 4. At a subsequent hearing, the trial court determined that instead of involuntary commitment, guardianship and protective placement services were the appropriate avenue for Carey pursuant to WIS. STAT. ch. 55. *Id.*, ¶ 5. However, the State was later notified by Carey's doctor that Carey was not a candidate for involuntary commitment under WIS. STAT. § 51.20 because he was not mentally retarded, and further, that Chapter 55 guardianship and protective services were not going to be pursued. *Carey*, 272 Wis. 2d 697, ¶ 5. In short, Carey was being discharged from all of the mental health treatment options set forth in the statutes. *See id.*

¶ 28. The State then moved the trial court to order a re-evaluation of Carey's competency. It argued that such a re-evaluation was permitted under W𝐼s. S𝑇𝐴𝑇. § 971.14(6)(d), which allows for the re-examination of a defendant who is discharged after being committed, or alternatively under § 971.14(6)(a) (the initial steps applicable to a defendant who is found unlikely to regain competency) which allows for periodic re-evaluation. *Carey*, 272 Wis. 2d 697, ¶ 6. Carey countered that his case did not specifically fall under the parameters of either of those statutes, because the suspension of his criminal proceedings occurred pursuant to § 971.14(4)(d) and his commitment occurred pursuant to § 971.14(6)(b). *Carey*, 272 Wis. 2d 697, ¶ 6. Neither of these subsections specifically tracks back to § 971.14(6)(a) or (d), which provide the authority to the trial court to order a re-evaluation. *Carey*, 272 Wis. 2d 697, ¶ 13. Thus, Carey argued that the trial court had no authority to order a competency re-evaluation. *Id.*, ¶ 6. The trial court agreed with Carey. *Id.*

¶ 29. We reversed. *Id.*, ¶ 15. While acknowledging that Carey was "technically" correct with regard to the procedure by which he was committed under emergency detention, we concluded that it is actually subsection (6)(a) that "specifically envisions and authorizes the court to order a civil commitment." *Carey*, 272 Wis. 2d 697, ¶ 14. We further observed that the purposes of W𝐼s. S𝑇𝐴𝑇. § 971.14, "to accommodate the constitutional protections against perpetual, unjustified confinement on the one hand and the interests of the public in prosecuting criminal defendants on the other hand," were necessarily "interwoven" with Chapter 51 by the legislature to achieve these goals. *Carey*, 272 Wis. 2d 697, ¶ 14. Thus, we found that "Carey's restrictive reading of the statute is not only highly

734

unreasonable, it also runs contrary to the statute's purposes." *Id.*, ¶ 15. Therefore, we ruled that the trial court retained jurisdiction over Carey. *Id.*, ¶ 14.

¶ 30.   Our analysis of the statutory construction of WIS. STAT. § 971.14 in *Carey*, along with the legislative history behind WIS. STAT. § 938.30(5)(d), can be practically applied to determine the proper interpretation of § 938.30(5)(d). A technical reading of that statute indicates that when a juvenile is found not competent, the trial court is authorized only to suspend the delinquency proceedings, without a means to either resume them if the juvenile is not subsequently found competent, or dismiss them. WIS. STAT. § 938.30(5)(d)-(e). However, the legislature intended that the statutory framework of the Juvenile Justice Code be "liberally construed." WIS. STAT. § 938.01(1). Therefore, like the *Carey* court, we reject a "restrictive reading of the statute" and instead focus on the goals of the legislature in drafting this statute. *See Carey*, 272 Wis. 2d 697, ¶ 15.

¶ 31.   We know from the legislative history of the revisions to WIS. STAT. § 938.30(5) initiated in 1993, as discussed above, that the legislature looked to the criminal statute relating to the procedures for adults with competency challenges, namely WIS. STAT. § 971.14. In that statute, subsection (6)(a) provides guidance for situations where a defendant is found unlikely to regain competency, guidance which is missing from the provisions in the Juvenile Justice Code:

> If the court determines that it is unlikely that the defendant will become competent within the remaining commitment period, it shall discharge the defendant from the commitment and release him or her, except as provided in par. (b). *The court may order the*

735

*defendant to appear in court at specified intervals for redetermination of his or her competency to proceed.*

WIS. STAT. § 971.14(6)(a) (emphasis added).

¶ 32.   The State asserts that the plain meaning of the last sentence in this section lends assistance in determining the legislature's aim with respect to the procedures it intended trial courts to follow in cases where defendants are found not competent:   the courts are to retain jurisdiction in order to enable them to revisit competency issues. This is in line with the statutory purposes of competency law, as set forth in *Carey*:   "to accommodate the constitutional protections against perpetual, unjustified confinement on the one hand and the interests of the public in prosecuting criminal defendants on the other hand." *Id.*, 272 Wis. 2d 697, ¶ 14.

¶ 33.   In contrast, A.L.'s argument does not align with the statutory text as it currently exists or with the legislature's apparent intent. A.L. contends that because his proceedings are indefinitely suspended under WIS. STAT. § 938.30(5)(d) without a means to resume them, the trial court has therefore lost competency over his case and it must be dismissed with prejudice. In the first place, this interpretation is not supported by a plain reading of the statute. The statute distinguishes bases for dismissal from bases for suspension:   in § 938.30(5)(c), the trial court is instructed to dismiss the petition with prejudice upon a finding that the juvenile was not responsible due to mental disease or defect, while § 938.30(5)(d) directs to court only to suspend the proceedings upon a finding of incompetence on the part of the juvenile.

¶ 34. Moreover, the legislative history relating to the statutory revisions initiated in 1993 indicates that the legislature rejected the prospect of dismissing juvenile proceedings after a finding of incompetency. In a memo dated December 9, 1993, the LRB drafting attorney noted that a redraft of the proposed revision to WIS. STAT. § 48.30(5)(c) (1991–92) eliminated a suggested provision "requiring dismissal with prejudice of a petition relating to a child who is found not likely to become competent." Instead, § 48.30(5)(d) (1993–94) was created, which called for a suspension of the proceedings under those circumstances "just in case the child later becomes competent." This is a clear indication that the legislature did not intend for a delinquency petition to be dismissed with prejudice under these circumstances. In fact, the language of WIS. STAT. § 938.30(5)(d) currently in effect tracks the language § 48.30(5)(d) as created in 1993.

■

¶ 35. "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." *Fond Du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989). Accordingly, we decline A.L.'s invitation to add a provision for dismissing proceedings with prejudice to WIS. STAT. § 938.30(5)(d).

■

¶ 36. In sum, the interpretation of WIS. STAT. § 938.30(5)(d) advocated by A.L.—that the trial court loses competency over the proceedings when the juvenile remains incompetent and thus the delinquency petition must be dismissed with prejudice—does not comport with the legislative history of the statute, nor does it promote the purposes of competency law. We therefore reject that interpretation, and instead find

that the legislature intended for the trial court to retain jurisdiction over delinquency proceedings where the juvenile remains incompetent such that the court may revisit the issue of competency when circumstances warrant re-evaluation. Accordingly, we reverse the decision of the trial court and remand this matter for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded with directions.