STATE EX REL. PORTER, Petitioner-Appellant, v. WOLKE, Sheriff, and another, Respondents.

*No. 77–016. Argued September 14, 1977.—Decided October 5, 1977.*
(Also reported in 257 N. W. 2d 881.)

200

For the appellant there was a brief by *James C. Reiher* and *Perry & First, S. C.* of Milwaukee, and *Howard B.*

*Eisenberg,* state public defender, and oral argument by *Mr. Reiher.*

For the respondents the cause was argued by *Pamela Magee-Heilprin,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ROBERT W. HANSEN, J. As he did before the trial court and on his application for a writ of habeas corpus, this petitioner-appellant contends on appeal that the trial court was without jurisdiction to order a reexamination of his competency to stand trial on the charges of first-degree murder, armed robbery and attempted armed robbery, or to confine him for the purpose of having such reexamination conducted.

The petitioner's challenge to the trial court's jurisdiction is based on the contention that once an incompetent accused is found by the trial court to be unlikely to become competent in the foreseeable future, his competency cannot be reexamined and he cannot be required to stand trial on the charges brought against him. As petitioner sees it, the trial court loses jurisdiction to proceed as a result of the ruling of the United States Supreme Court in the *Jackson Case,*[1] and the ruling of this court in the *Haskins Case.*[2] Petitioner correctly notes that, prior to its recent revision,[3] the former statute in this state provided that an accused who was found incompetent to stand trial could be committed for a period equal to the maximum term for which he could be incarcerated if found guilty.[4] Petitioner correctly contends that the United States Supreme Court in *Jackson* disapproved of such a provision, holding in-

[1] *Jackson v. Indiana,* 406 U.S. 715 (1972).

[2] *State ex rel. Haskins v. Dodge County Court,* 62 Wis.2d 250, 214 N.W.2d 575.

[3] *See:* Sec. 971.14(5), Stats. 1975.

[4] *See:* Sec. 971.14(5), Stats. 1973.

stead that an accused found incompetent to stand trial must be released if it appears that he will not attain or regain competency within a reasonable time.[5] However, the court in *Jackson* did not suggest that the criminal charges must be dismissed at such juncture. Instead, it left to the state courts the issue of when the constitutional assurances of speedy trial and due process might require dismissal of criminal charges against an incompetent accused[6] and even suggested that the states may permit certain proceedings not associated with the incompetent accused's defense to go forward in spite of his incompetence.[7]

Responding at the first opportunity to the high court's invitation in *Jackson*, this court in *Haskins* decided the

[5] *Jackson v. Indiana, supra,* n. 1, at 738, wherein the United States Supreme Court held: "We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal."

[6] *Id.* at 740. The high court held: "Dismissal of charges against an incompetent accused has usually been thought to be justified on grounds not squarely presented here: particularly, the Sixth-Fourteenth Amendment right to a speedy trial, or the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence. Jackson did not present the Sixth-Fourteenth Amendment issue to the state courts. Nor did the highest state court rule on the due process issue, if indeed it was presented to that court in precisely the above-described form. We think, in light of our holdings in Parts II and III, that the Indiana courts should have the first opportunity to determine these issues."

[7] *Id.* at 741.

issue of whether the release from commitment of an incompetent accused ended the trial court's jurisdiction to proceed with pending criminal charges. It specifically rejected that conclusion. In *Haskins* the public defender, like the petitioner here, argued that once an incompetent accused is released from an incompetency commitment under *Jackson,* the criminal charges originally brought against him must also be dismissed. Instead, this court held that: "Under sec. 971.14, the committing court has, for trial competency purposes, continuing jurisdiction over the defendant until the prosecution is resolved, either by trial and judgment or dismissal by the trial court."[8] In the case before us, when the trial court vacated the criminal commitment proceedings to permit civil commitment proceedings to begin, the trial court, as the judgment roll entry made clear, ordered that: "The criminal proceedings shall remain continued." *Haskins* went well beyond this to state that in situations where an incompetent accused has been released from commitment before being confined for the maximum period for which he could have been confined if found guilty of the offense charged, ". . . in the absence of a statute to the contrary, a court has no power before trial to dismiss criminal charges or enter a *nolle prosequi.*"[9] Reliance upon either *Jackson* or *Haskins* for the claim that the trial court loses jurisdiction to proceed on criminal charges when an incompetent accused is released from either criminal or civil commitment is misplaced.

As to the possible claim of denial of the right to a speedy trial, *Haskins* makes clear that: "[T]he mere fact of confinement beyond the time when it appears likely that a defendant will recover his competency,

---

[8] *State ex rel. Haskins v. Dodge County Court, supra,* n. 2, at 262.

[9] *Id.* at 267.

whether under the original commitment by the criminal process or by a subsequent civil commitment, does not ipso facto mandate a dismissal on grounds of denial of a speedy trial."[10] *Jackson* itself "refused to consider the speedy-trial question as a matter of law."[11] *Haskins* made clear that "speedy trial claims would have to be decided on a case-by-case basis," and that, "Separate motions addressed to the speedy-trial questions should be brought in respect to the present petitioners."[12] Just so, the petitioner may make separate motions addressed to the speedy-trial issues involved in bringing the petitioner to trial, but such issues will not at this juncture block the reexamination of the petitioner's competency to stand trial. His claim here is that the trial court lost jurisdiction to order such a reexamination and to confine him for the sole purpose of reexamining him. Our response is that the trial court did not lose jurisdiction to do exactly that.

Following the hearing on the state's motion for a reexamination of the petitioner's competency to stand trial, the trial court rejected the petitioner's claim that it lost jurisdiction and ordered a reexamination. We have concluded that the trial court was entitled to order a reexamination of this petitioner for the sole and limited purpose of determining whether he had become competent to stand trial. When this order was made and entered, petitioner having appeared at the hearing specially by counsel was not in court. Therefore the trial court issued a bench warrant or capias for his arrest and confinement for the limited purpose of the competency examination. Petitioner's claim is that the trial court "had no jurisdiction over the petitioner and, as a result, had no authority to issue a capias for his arrest."[13] That con-

---

[10] *Id.* at 270.
[11] *Id.*
[12] *Id.* at 271.
[13] Petitioner-Appellant's Brief at 16.

tention collapses with our holding that the trial court continued to have jurisdiction over the person of the petitioner and was entitled to order a reexamination as to his competency.

However, while the basic challenge here is a jurisdictional one, petitioner appears also to challenge the way in which he was brought back to court, to wit, the use of a capias issued for his appearance in order to reexamine his competency to stand trial. The general rule is that: "One accused of crime, not in custody or under bail, may be brought before the court, after indictment or information filed, by means of a bench warrant, or a capias, for his arrest."[14] However, the Wisconsin statutes provide that a warrant on failure to appear may be issued only "[w]hen a defendant or a witness fails to appear before the court as required, or violates a term of his bond or his probation, if any. . . ."[15] Here the petitioner elected to have his attorney appear for him specially at the hearing on the reexamination of his competency to stand trial. It was certainly the petitioner's right so to do. But as a result he was absent when the court ordered him confined for a competency examination, and the trial court needed some way of bringing him before it. Therefore we do not hold it inappropriate for the trial court to consider the petitioner's nonappearance at the hearing a "failure to appear" within the meaning of the statute and to issue "a bench warrant for his arrest which shall direct that he be brought before the court without unreasonable delay."[16] However, in substance if not form, we consider the issuance of the capias directing that the petitioner be placed in confinement for the purpose of reexamination to be analogous to the order of commitment, which the statute

---

[14] 22 C.J.S., *Criminal Law*, sec. 404, page 1104 (1961).

[15] Sec. 968.09 (1), Stats. 1975.

[16] *Id.*

provides as the mechanism for committing an accused originally to the department for an examination of competency to stand trial.[17] That statute provides for commitment to "a state or county mental health facility or other suitable facility for the purpose of examination for a specified period not to exceed 60 days."[18] We see no reason for holding that the maximum period of time for commitment of an accused for purposes of reexamination as to his competency to stand trial should exceed the time limit set for original examinations as to competency to stand trial.

In the case before us, because the principal dispute between the parties concerns the continuing jurisdiction of the trial court, it is not a simple matter to determine exactly what period of time the trial court fixed as the maximum period of court-ordered confinement for psychiatric reexamination. The court's judgment roll entry of July 1, 1977, states that the petitioner was committed to the department for sixty days for the court-ordered reexamination. While agreement between the litigants is hardly a substitute for the correction of a court record, it is noted that the state and the petitioner here agree that this judgment roll entry is in error. In error it clearly is as to the "suitable place of confinement" ordered, since the petitioner has been confined in the county jail and not the Central State Hospital. However, as to the maximum period of confinement permitted for such a reexamination, we find the judgment roll entry to be correct. Questions on oral argument failed to provide any reliable basis for concluding that the reexamination here ordered has been concluded or even commenced. Since the basic challenge by writ was to the right of the court to order the reexamination at all, the

[17] Sec. 971.14(2), Stats. 1975.
[18] Id.

failure to conduct the examination is understandable. However, as to future court-ordered confinements for reexamination of competency to stand trial of an accused who has been released under *Jackson*, we hold the sixty-day limit of sec 971.14(2), Stats. 1975, to be applicable to reexaminations as well as to initial examinations. Unless an examination of the petitioner is completed at an earlier date, it is ordered that the confinement of this petitioner for the limited purpose of reexamining his competency to stand trial is not to exceed sixty days from the date of remittitur.

We note also that the trial court here, following the hearing on the state's motion for reexamination, set bail for this petitioner at $20,000 on the three murder and armed robbery charges. No challenge is made to the reasonableness of this bail requirement nor could such a challenge succeed. However, the bail set by the trial court is to be viewed, as bail customarily is, as bail set to insure appearance at time of trial. The court-ordered confinement for the purpose of psychiatric examination as to competency to stand trial, with its implicit determination that such confinement is both necessary and appropriate for a competency examination, has nothing to do with insuring the defendant's appearance at trial. When the trial court determines that confinement is necessary, under sec. 971.14, Stats. 1975, for examination of a defendant's competency to proceed, ability to post bail or the amount of bail is not considered. It is irrelevant whether the person whose competency to stand trial is to be determined is a millionaire or a pauper. When an accused is ordered confined in a suitable facility for the examination or for the reexamination of his competency to stand trial, confinement for this limited purpose and for this limited period of time is not to be ended or interrupted by the posting of bail. When confined for psychiatric examination as to competency, a defendant, rich or poor, is not bailable. Our court has made clear

that the "duration of a commitment pursuant to sec. 971.14, Stats., must be for . . . a period only for so long as it takes to determine whether an incompetent person will not soon recover and be able to stand trial."[19] During that period of time, not to exceed sixty days, the right to release on bail is suspended.

*By the Court.*—Order affirmed.

[19] *State ex rel. Matalik v. Schubert,* 57 Wis.2d 315, 327, 328, 204 N.W.2d 13 (1973).