# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2016AP880 |
| COMPLETE TITLE: | In the interest of A.L., a person under the age of 17:<br><br>State of Wisconsin,<br>    Petitioner-Appellant,<br>  v.<br>A. L.,<br>    Respondent-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 378 Wis. 2d 721, 904 N.W.2d 543
PDC No:2017 WI App 72

| | |
|---|---|
| OPINION FILED: | March 7, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 5, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Christopher T. Dee |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | KELLY, J. concurs (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-respondent-petitioner, there were briefs filed by *Jorge R. Fragoso*, assistant state public defender. There was an oral argument by *Jorge R. Fragoso*.

For the petitioner-appellant, there was a brief filed by *Luke N. Berg*, deputy solicitor general, with whom on the brief was *Brad D. Schimel*, attorney general, and *Misha Tseytlin*, solicitor general. There was an oral argument by *Luke N. Berg*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP880
(L.C. No. 2012JV389A)

STATE OF WISCONSIN : IN SUPREME COURT

**In the interest of A.L., a person under the age of 17:**

**State of Wisconsin,**

    **Petitioner-Appellant,**

  **v.**

**A.L.,**

    **Respondent-Respondent-Petitioner.**

**FILED**

**MAR 7, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA FRANK DALLET, J. The Milwaukee County Circuit Court, T. Christopher Dee presiding, denied the State's motion to recall A.L.'s juvenile delinquency proceedings. We review the court of appeals' decision reversing the circuit court.[1]

¶2 A.L. seeks review of two issues: (1) whether a circuit court can resume suspended juvenile delinquency

---

[1] State v. A.L., 2017 WI App 72, 378 Wis. 2d 721, 904 N.W.2d 543.

proceedings to reexamine the competency of a juvenile who was initially found not competent to proceed under Wis. Stat. § 938.30(5)(d) (2015-16)[2] and not likely to become competent within the statutory time limits; and (2) whether the circuit court retains competency over juvenile delinquency proceedings after an accompanying juvenile in need of protection or services (JIPS) order has expired.[3]

¶3 We conclude that a circuit court can resume suspended juvenile delinquency proceedings to reexamine the competency of a juvenile who was initially found not competent and not likely to become competent within the statutory time frame. We also conclude that a circuit court retains competency over juvenile delinquency proceedings even after an accompanying JIPS order has expired. Accordingly, we affirm the decision of the court of appeals.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 The juvenile delinquency petition at issue pertains to an incident that occurred in November 2012 when A.L. was 15 years old. Milwaukee police officers were dispatched to a residence where they found a man lying on the front porch with a stab wound to his chest. During a search of the residence, the officers recovered a silver metal knife in the kitchen sink.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[3] A "juvenile in need of protection or services" order, as discussed in Wis. Stat. § 938.13, is commonly referred to as a "JIPS" order.

2

A.L. admitted to an officer that he had stabbed his 25-year-old cousin after observing him violently fighting with A.L.'s 16-year-old brother.

¶5 A delinquency petition was filed in November 2012 when A.L. was 15 years old, alleging A.L. committed second-degree reckless homicide while armed with a dangerous weapon. At A.L.'s plea hearing, defense counsel challenged A.L.'s competency to proceed. The circuit court suspended the proceedings and ordered two competency evaluations of A.L. Both psychologists found A.L. not competent and not likely to become competent within the statutory time frame, and the circuit court agreed. Pursuant to Wis. Stat. § 938.30(5)(d), the circuit court suspended the delinquency proceedings against A.L., entered a JIPS order, and placed A.L. in a residential treatment center. A.L.'s JIPS order was later extended for another year and expired in March 2015.

¶6 While the JIPS order was pending, the State filed additional charges against A.L.: (1) a June 2014 juvenile delinquency petition alleging criminal damage to property; and (2) a December 2014 complaint alleging battery, criminal damage to property, and disorderly conduct in adult criminal court.[4] In the 2014 delinquency proceedings, A.L. was found not competent and not likely to become competent within the one-year statutory

---

[4] A.L. was 17 years old at the time of the December 2014 offense and therefore the State filed adult criminal charges. A.L. is now 21 years old.

3

time frame. The circuit court suspended the proceedings and entered another JIPS order which expired in October 2015. However, in the adult criminal proceedings A.L. was found not competent but likely to become competent. A.L. was then sent to Mendota Mental Health Facility in March 2015 for competency remediation. In May 2015, a doctor at Mendota found A.L. competent to proceed. A.L. did not challenge this competency finding and pled guilty to the battery and criminal damage to property charges.

¶7 As a result of the competency finding in the adult criminal proceedings, the State moved for a reevaluation of A.L.'s competency in the 2014 delinquency proceedings. After hearing testimony, the circuit court found A.L. competent and resumed proceedings on the June 2014 delinquency petition.

¶8 The State then filed a motion to recall for reconsideration of A.L.'s competency in the November 2012 juvenile delinquency case. The circuit court held that under the circumstances, where A.L. was initially found not competent and unlikely to become competent, Wis. Stat. § 938.30(5) did not provide a procedure for reinstating the suspended delinquency proceedings. Therefore, the circuit court denied the State's motion and ruled that the proceedings remained suspended, and "just kind of sit[] in limbo." The State appealed the circuit court's decision.

¶9 The court of appeals reversed and remanded the matter, concluding that Wis. Stat. § 938.30(5)(d) allows the circuit court to retain authority over delinquency proceedings where the

4

juvenile remains not competent such that the circuit court may revisit the issue of competency when circumstances warrant reevaluation. See State v. A.L., 2017 WI App 72, ¶36, 378 Wis. 2d 721, 904 N.W.2d 543. The court of appeals determined that § 938.30(5)(d) was ambiguous and therefore relied upon legislative history to determine its meaning. See id., ¶2.

¶10 A.L. seeks review of two issues: (1) whether a circuit court can resume suspended delinquency proceedings to reexamine the competency of a juvenile who was initially found not competent to proceed under Wis. Stat. § 938.30(5)(d) and not likely to become competent within the statutory time limits; and (2) whether the circuit court retains competency over delinquency proceedings after an accompanying JIPS order has expired.

## II. STANDARD OF REVIEW

¶11 The focus in this case is on the interpretation of Wis. Stat. § 938.30(5), the statute that governs competency within the Juvenile Justice Code. Statutory interpretation is a question of law that this court reviews de novo. Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶9, 315 Wis. 2d 350, 760 N.W.2d 156. The purpose of statutory interpretation is to "determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is "given its common, ordinary, and accepted meaning," unless there are technical or specially-defined words or phrases. Id., ¶45. "A statute's

5

purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes— that is, from its context or the structure of the statute as a coherent whole." Id., ¶49.

### III. ANALYSIS

¶12 This case concerns a circuit court's ability to resume[5] suspended delinquency proceedings to reexamine the competency of a juvenile who was initially found not competent and unlikely to become competent, and what effect, if any, an expired JIPS order has on the circuit court's competency over the delinquency proceedings.[6] The court of appeals concluded that the language of Wis. Stat. § 938.30(5) was ambiguous and therefore turned to legislative history. A.L. and the State disagree with the court of appeals' holding that § 938.30(5) is ambiguous. Instead, both parties assert that the language of § 938.30(5) is unambiguous and supports their respective positions. In the

---

[5] The State labelled its motion "State's Motion to Recall Suspended Case." Such a motion would be the procedural mechanism triggering a circuit court to order a competency evaluation. If A.L. is ultimately found competent, the circuit court could then resume the proceedings in the November 2012 juvenile delinquency case. The circuit court would then have two options: dismissal of the action with prejudice or waiver of jurisdiction pursuant to Wis. Stat. § 938.18.

[6] Noncompliance with statutory mandates affects a court's "competency," which is "not jurisdictional at all, but instead, is defined as 'the power of a court to exercise its subject matter jurisdiction' in a particular case." City of Eau Claire v. Booth, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738 (quoted source omitted).

alternative, A.L. asserts that the circuit court retained competency over him only for the duration of his JIPS order, which had expired at the time the State filed its motion to recall.

### A. The circuit court has authority to resume suspended juvenile delinquency proceedings to reexamine competency.

¶13 We interpret Wis. Stat. § 938.30(5) and determine whether the statute is ambiguous. Section 938.30(5)(d) provides that if a juvenile is found not competent to proceed, the circuit court "shall suspend proceedings" on a juvenile delinquency petition and order the State to file a petition for a Wis. Stat. ch. 51 commitment or a JIPS petition. Where a juvenile is found not competent but likely to become competent "within 12 months or within the time period of the maximum sentence that may be imposed," § 938.30(5)(e) mandates periodic reexaminations with written reports to be filed "every 3 months and within 30 days" before the juvenile's commitment or dispositional order expires. If a report indicates that the juvenile has become competent, the circuit court "shall hold a hearing within 10 days" and "determine whether the juvenile is competent. If the court determines that the juvenile is competent, the court shall terminate the juvenile's commitment or dispositional order and resume the delinquency proceeding." § 938.30(5)(e)2. However, § 938.30(5) does not address what becomes of the suspended delinquency proceedings for juveniles

7

who are found not competent and not likely to become competent within the statutory time frame, like A.L.

¶14  The court of appeals concluded that because Wis. Stat. § 938.30(5)(d) provides no guidance as to a particular procedure to follow in cases where a juvenile is found not competent and not likely to become competent within the statutory time limits, the statute is ambiguous.  See A.L., 378 Wis. 2d 721, ¶2.  The court of appeals thus turned to legislative history to resolve this perceived ambiguity.

¶15 Upon examination of the language of Wis. Stat. § 938.30(5), in conjunction with the language of ch. 938, we agree with the parties that there is no ambiguity.  Although there is no explicit procedure laid out in § 938.30(5) to reinstate the suspended delinquency proceedings in A.L.'s case, the language of § 938.30(5)(d) and the surrounding subsections are unambiguous.  Ambiguity results where statutory language reasonably gives rise to different meanings, and that is not the case here.  See Kalal, 271 Wis. 2d 633, ¶47.  Instead, reading § 938.30(5) in conjunction with the language of ch. 938 demonstrates that a circuit court has the authority to resume suspended proceedings in cases where a juvenile was initially found not competent to proceed under § 938.30(5)(d) and not likely to become competent within the statutory time limits.

¶16 First, the word "suspend" signifies a temporary postponement and implies that a circuit court can resume the proceedings if the reason for the suspension disappears.  We rely on dictionary definitions when the legislature fails to

8

provide a definition in the statute. Wisconsin DOR v. River City Refuse Removal, Inc., 2007 WI 27, ¶46, 299 Wis. 2d 561, 729 N.W.2d 396. According to Black's Law Dictionary, "suspend" means "to interrupt; postpone; defer." Suspend, Black's Law Dictionary 1584 (9th ed. 2009). See also Oxford English Dictionary 318 (2d ed. 1989) (defining "suspend" as "to stop or check the action of movement of something temporarily"); Webster's Third New International Dictionary 2303 (2002) (defining "suspend" as "stop temporarily"). The word suspend thus implies that something is postponed until a condition has been met. Here, the precondition of suspension that no longer exists is A.L.'s lack of competency.

¶17 Second, Wis. Stat. § 938.30(5) distinguishes between dismissal of a petition where a circuit court finds a juvenile not responsible by reason of mental disease or defect, and suspension of proceedings on the petition where a circuit court finds a juvenile is not competent. Compare § 938.30(5)(c) with § 938.30(5)(d). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶46. When the legislature uses different terms in a statute, the terms are presumed to have distinct meanings. See Johnson v. City of Edgerton, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996). The words dismiss and suspend in §§ 938.30(5)(c) and (5)(d) are

9

intended to function differently, especially in light of the fact that subsections (5)(c) and (5)(d) are otherwise identical.[7]

¶18 Further, there is a logical distinction between the suspension of a case where a juvenile is not competent to proceed and the dismissal of a case where a juvenile's affirmative defense is lack of mental responsibility. The latter resolves the case on the merits and there is no matter left for the circuit court to decide. On the other hand, a juvenile's lack of competency bears only upon the juvenile's current ability to participate in the proceedings; it is not related to the merits of the case. If the circuit court cannot resume suspended proceedings once a juvenile becomes competent, there would be no means of conclusion or resolution of the case, and A.L.'s 2012 delinquency proceedings would be suspended indefinitely. Where a juvenile does not become competent within the statutory time frame, suspension would therefore act as the functional equivalent of dismissal. Reading Wis. Stat. § 938.30(5) in such a manner would upend the distinction between suspension and dismissal, rendering the terms essentially identical in practice.

---

[7] Compare Wis. Stat. § 938.30(5)(c) ("[i]f the court finds that the juvenile was not responsible by reason of mental disease or defect, as described under [Wis. Stat. §§] 971.15(1) and (2), the court shall dismiss the petition with prejudice"), with § 938.30(5)(d) ("[i]f the court finds that the juvenile is not competent to proceed, as described in [Wis. Stat. §§] 971.13(1) and (2), the court shall suspend proceedings on the petition").

¶19 Lastly, reading Wis. Stat. § 938.30(5) in relation to the language of a surrounding statute, Wis. Stat. § 938.12(2), the circuit court retains jurisdiction to resume A.L.'s suspended delinquency proceedings to reevaluate A.L.'s competency regardless of the fact that A.L. is currently 21 years old. Section 938.12(2) provides:

> If a petition alleging that a juvenile is delinquent is filed before the juvenile is 17 years of age, but the juvenile becomes 17 years of age before admitting the facts of the petition at the plea hearing or if the juvenile denies the facts, before an adjudication, the court retains jurisdiction over the case.

Here, the petition was filed when A.L. was 15 years old and, because A.L. was found not competent, the proceedings were suspended. A.L. neither admitted nor denied the facts of the petition before turning 17 years old and therefore the circuit court retained jurisdiction over the delinquency proceedings pursuant to § 938.12(2).

¶20 A.L. asserts that Wis. Stat. § 938.30(5)(e)2. is the exclusive path to resumption of the delinquency proceedings because it is the only subsection that references resumption of proceedings. A.L. points to the following language, "[i]f a report under [§ 938.30(5)(e)1.] indicates that the juvenile has become competent" and the circuit court agrees, "the court shall terminate the juvenile's commitment or dispositional order and resume the delinquency proceeding." § 938.30(5)(e)2. However, there is no support for A.L.'s claim that § 938.30(5)(e)2. is the exclusive mechanism for the circuit court to resume

11

delinquency proceedings upon a finding of competency. Section 938.30(5)(e) does not use limiting language such as "only," or "except for," and we will not read limiting language into the statute. See Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27, ¶16, 316 Wis. 2d 47, 762 N.W.2d 652; C. Coakley Relocation Sys., Inc. v. City of Milwaukee, 2008 WI 68, ¶24, 310 Wis. 2d 456, 750 N.W.2d 900.

¶21 A.L. additionally argues that the time frame for reexamination and filing of written reports set forth in Wis. Stat. § 938.30(5)(e)1. for juveniles likely to become competent establishes the exclusive authority of the circuit court to reexamine juveniles who have been found not competent. Section 938.30(5)(e)1. dictates that such juveniles "shall be periodically reexamined with written reports of those reexaminations to be submitted to the court every 3 months and within 30 days before the expiration of the juvenile's commitment or dispositional order." There is no statutory requirement for how often these reexaminations can or should take place; instead, the statute only places minimum requirements for submission of reports on those reexaminations. Therefore, § 938.30(5)(e)1. does not otherwise supplant the circuit court's authority to order a reexamination, during or after the statutory time frame, especially where the defendant has been found competent in more recent cases.

¶22 Lastly, A.L. asserts that the State's interpretation of Wis. Stat. § 938.30(5) is inequitable, as illustrated by the hypothetical situation of the State moving to recall suspended

12

delinquency proceedings to reevaluate the competency of a 50-year-old who was found not competent as a 15-year-old. Under A.L.'s hypothetical, any unfairness as a result of the circuit court resuming proceedings[8] years later would be checked by the defendant's constitutional rights to due process and a speedy trial.[9] A.L. also stresses the purpose of the Juvenile Justice Code and the importance of diverting juveniles from the juvenile justice system through early intervention. While that is a stated purpose of the Juvenile Justice Code, another stated

---

[8] If A.L. is found competent, the State intends to ask the circuit court to waive its jurisdiction so that the case could be tried in adult criminal court. The Juvenile Justice Code specifically provides that a circuit court retains jurisdiction over a delinquency case, see Wis. Stat. § 938.12(2), and that the State may seek waiver, see Wis. Stat. § 938.18(2), even after the juvenile becomes an adult. See State v. Phillips, 2014 WI App 3, ¶6, 352 Wis. 2d 493, 842 N.W.2d 504. The circuit court would still need to make the discretionary waiver determination by applying the criteria listed in § 938.18(5). Alternatively, the circuit court could choose to dismiss the action with prejudice.

[9] The violation of the right to a speedy trial is a case-by-case determination that weighs, among other factors, the "prejudice to the defendant." See Barker v. Wingo, 407 U.S. 514, 532 (1972). Further, the constitutional guaranty of due process is a protection against prejudice to the defense caused by passage or lapse of time. See United States v. MacDonald, 456 U.S. 1, 8 (1982). An individual's due process rights are rooted in the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Wisconsin Constitution. State v. Wood, 2010 WI 17, ¶17, 323 Wis. 2d 321, 780 N.W.2d 63. The question of fairness is addressed as a matter of "procedural" due process. Id. In A.L.'s posed hypothetical situation, there may be concerns about the defendant's ability to confront and cross-examine witnesses, as well as call witnesses in his own defense.

13

purpose is "[t]o hold each juvenile offender directly accountable for his or her acts" and to protect the public. Wis. Stat. §§ 938.01(2)(a) and (b).

¶23 We conclude that the language of Wis. Stat. § 938.30(5), read in conjunction with the language of ch. 938, allows a circuit court to resume delinquency proceedings that were suspended because a juvenile was initially found not competent to proceed under § 938.30(5)(d) and not likely to become competent within the statutory time limits.[10]

B. An expired JIPS order is irrelevant to a circuit court's competency over juvenile delinquency proceedings.

¶24 In the alternative, A.L. asserts that the circuit court retained competency over A.L. only for the duration of the accompanying JIPS order, which expired in March 2015. A.L. contends that the circuit court could have reexamined him only through March 2015 because his JIPS order was not extended beyond that time. However, A.L. points to no statutory language that supports the position that a circuit court loses competency over delinquency proceedings just because an accompanying JIPS order expires.

¶25 On the other hand, the State points to several cases where this court has determined that a criminal proceeding is

---

[10] Wisconsin Stat. ch. 51 allows temporary civil commitment for those who are "mentally ill," "proper subject[s] for treatment," and "'dangerous' to themselves or to others." See In re Helen E.F., 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179.

14

jurisdictionally independent from a civil commitment based on lack of competency. See State ex rel. Porter v. Wolke, 80 Wis. 2d 197, 257 N.W.2d 881 (1977); see also State ex rel. Haskins v. County Court of Dodge Cty., 62 Wis. 2d 250, 214 N.W.2d 575 (1974). The State asserts that Porter explicitly rejects A.L.'s argument. Porter, 80 Wis. 2d 197. In Porter, criminal proceedings against a defendant were suspended when the defendant was found not competent to stand trial and was later civilly committed. Id. at 200. Shortly thereafter, the defendant was released from civil commitment and the district attorney moved for a reexamination of the defendant to determine if he was competent to stand trial. Id. at 201-02. The defendant asserted that the criminal proceedings against him could not be resumed. Id. at 202. This court held that the circuit court did not lose its jurisdiction to proceed on the criminal charges because they were independent of the defendant's commitment. Id. at 204-05. However, this court did not foreclose the possibility of a defendant's claim of denial of the right to a speedy trial. Id. We agree with the State that Porter applies here to render JIPS proceedings jurisdictionally independent from delinquency proceedings.

¶26 A.L. cites to Wis. Stat. § 938.13 for the proposition that after a circuit court suspends delinquency proceedings because a juvenile is found not competent, a court presiding over the JIPS proceedings is granted "exclusive original

15

jurisdiction" over the juvenile.[11]  According to A.L., if the JIPS order expires before the juvenile is found competent to proceed on the delinquency proceedings, the circuit court loses competency over the delinquency proceedings.  However, the JIPS court has jurisdiction only over the JIPS proceedings, which are separate from the delinquency proceedings.  A JIPS order or ch. 51 commitment assists only in competency restoration and provides services and safety to juveniles.

¶27 Wisconsin Stat. § 938.30(5)(e) further demonstrates that the court presiding over the JIPS proceedings does not truly have "exclusive original jurisdiction" in the sense that A.L. asserts.  Pursuant to § 938.30(5)(e), a juvenile who is found not likely to become competent is subject to a separate JIPS order, yet the circuit court may continue to exercise jurisdiction over the juvenile through reexamination for competency and resumption of delinquency proceedings if the juvenile becomes competent within the statutory time frame.  Therefore, the expiration of A.L.'s accompanying JIPS order in March 2015 has no bearing on the circuit court's competency to proceed with A.L.'s delinquency proceedings.

IV.  CONCLUSION

¶28 We conclude that a circuit court can resume suspended juvenile delinquency proceedings to examine the competency of a

---

[11] Wisconsin Stat. § 938.13 reads:  "[e]xcept as provided in [Wis. Stat. §] 938.028(3), the court has exclusive original jurisdiction over a juvenile alleged to be in need of protection or services."

16

juvenile who was initially found not competent and not likely to become competent within the statutory time frame. We also conclude that a circuit court retains competency over juvenile delinquency proceedings even after an accompanying JIPS order has expired. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶29 DANIEL KELLY, J. *(concurring).* We perceived a need for Wis. Stat. § 938.30(5) to say more than it actually does. And that perception drove us to conjure additional material that doesn't really exist in the statute. That's an understandable impulse——we are loath to leave silence alone, to let a voice not speak, to leave something unsaid.

> There is a silence where hath been no sound,
> There is a silence where no sound may be,
> In the cold grave—under the deep deep sea,
> Or in wide desert where no life is found,
> Which hath been mute, and still must sleep profound;
> No voice is hush'd——no life treads silently,
> But clouds and cloudy shadows wander free.

Thomas Hood, Silence (1827). In conversations, in stories, in all manner of communications we nod along as one thought flows comfortably into the next. But when the narrative unexpectedly stops, we reflexively rebel against the silence that denies us the rest of the story. So we finish the unspoken thought, complete the unfinished plot. As natural as that reaction might be in most affairs of life, we must give it no heed when we construe statutes. It is for the legislature to decide when to compose, and when to lay aside the pen. If that choice brings silence earlier than we expect or hope, our disappointment does not give us leave to take up the pen and write in its name.

¶30 But still, we did. The circuit court suspended A.L.'s delinquency proceeding pursuant to Wis. Stat. § 938.30(5) because it found he was not competent, and not likely to regain competency within the required timeframe. Subsequently, Mr. L. demonstrated competency in an unrelated proceeding, and thus arose the question of whether the circuit court could resume the

1

delinquency proceeding to evaluate his competency. We looked to § 938.30(5) to see what it might say about such a possibility. There we discovered that "§ 938.30(5) does not address what becomes of the suspended delinquency proceedings for juveniles who are found not competent and not likely to become competent within the statutory time frame, like A.L." Majority op., ¶13. Alas, a double-edged silence: the statute said nothing about how proceedings might resume, nor did it require their termination. The apparent result, as the circuit court observed, was a procedural "limbo" in which the proceeding could neither progress nor be dismissed.

¶31 We could not abide the statute's silence, so we said that our "reading of § 938.30(5) in conjunction with the language of ch. 938 demonstrates that a circuit court has the authority to resume suspended proceedings in cases where a juvenile was initially found not competent to proceed under § 938.30(5)(d) and not likely to become competent within the statutory time limits." Id., ¶15. Within the space of two paragraphs, we transformed Wis. Stat. § 938.30(5) from a statute that does not even address resumption of suspended delinquency proceedings, into a statute that definitively provides the necessary authority to resume. I think the first iteration was right. If the statute has something to say in paragraph 15 that it did not say in paragraph 13, it's only because we used the legislature's pen to finish the story we thought we should have heard.

2

¶32 This intrusion into legislative silence was not just unwarranted, it was completely unnecessary. When the legislature adopted Wis. Stat. § 938.30(5), it was composing against the background of our pre-existing authority. We have already recognized that the authority to suspend and resume proceedings based on a defendant's incompetency pre-dated this statute. In fact, our competency statutes are actually codifications of principles and practices that were already old before we even became a state. In State v. Seward, we recalled the practice of English courts when competency was an issue:

> Also if a man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried, for how can he make his defense? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of nonsane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution.

124 Wis. 623, 630, 102 N.W. 1079 (1905) (quoting 4 William Blackstone, Commentaries ch. 2 *24-25). "Our statute," we said, "is an affirmance of these humane principles of the common law, and the reason upon which it rests makes manifest the intention of the Legislature." Id. at 630-31. See also Crocker v. State, 60 Wis. 553, 556, 19 N.W. 435 (1884) ("At common law, if a person, after committing a crime, became insane, he was not arraigned during his insanity, but was remitted to prison until such incapacity was removed.").

3

¶33 The authority to regulate our proceedings is not, of course, exclusive to us—the legislature may make its contribution as well: "[T]he power to regulate procedure has been regarded not as an exclusively legislative power, nor yet as an exclusively judicial power, but certainly as a power properly within the judicial province when not otherwise directed by the legislature." Rules of Court Case, 204 Wis. 501, 510, 236 N.W. 717 (1931). So the real question is whether the legislature, in adopting Wis. Stat. § 938.30(5), removed our pre-existing authority to resume juvenile delinquency proceedings to determine whether the defendant has regained his competency. The court's opinion does a convincing job of demonstrating there is no such prohibition, and I agree. Therefore, in the absence of any statutory prohibition the court may resume the suspended juvenile delinquency proceedings. But it may do so not because of any authority granted by § 938.30(5), but because the legislature did not remove the authority we already had.

¶34 When the legislature stops writing, "There is a silence where hath been no sound / There is a silence where no sound may be . . . ." We should not surmise it is unintentional, or accidental. No sound belongs there because it is the silence of the people's representatives choosing not to speak. "No voice is hush'd" there because there is no voice wishing to be heard. And in that stillness, "no life treads silently" in hopes we will give it expression. The quietness following the period in the statute's last sentence is the

4

oracular pronouncement that all has been said that will be said. We may no more compel the legislature to speak than we may ignore it when it does. For these reasons, I join the court's opinion except to the extent it discovers authority to resume Mr. L.'s delinquency proceedings in Wis. Stat § 938.30(5). The authority to resume those proceedings both pre-dated and survived enactment of that statute.