**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 14, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1109**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023JV39

**IN COURT OF APPEALS
DISTRICT I**

IN THE INTEREST OF Z.D.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-APPELLANT,

  V.

Z.D.S.,

       RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: NIDHI KASHYAP, Judge. *Affirmed*.

¶1    DONALD, P.J.[1]  The State appeals from an order dismissing a delinquency petition filed against Z.D.S. (hereinafter Zach)[2] and referring the matter for a deferred prosecution agreement (DPA).  The State contends that the trial court erroneously exercised its discretion.[3]  For the reasons discussed below, we reject the State's argument and affirm.

## BACKGROUND

¶2    The State filed a delinquency petition charging fourteen-year-old Zach with three felony offenses:  second-degree recklessly endangering safety, attempting to flee or elude an officer, and driving or operating a motor vehicle without the owner's consent.

¶3    According to the petition, on January 9, 2023, at 6:00 p.m., Zach took his mother's car without permission.  Police observed the car being operated at a "high speed" as it turned a corner and slid across multiple lanes of traffic.  When officers attempted a traffic stop, Zach did not stop the car and fled ultimately crashing into a pickup truck.  At the time of the petition, Zach had no previous contacts with the juvenile justice system and was a student at the Morse Middle School for the Gifted and Talented.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, in lieu of using the initials Z.D.S., we use the pseudonym "Zach."

[3] The State's brief argues that the trial court "abused its discretion."  In 1992, our supreme court abandoned the phrase "abuse of discretion," and replaced it with "erroneous exercise of discretion."  *Seifert v. Balink*, 2017 WI 2, ¶93 n.50, 372 Wis. 2d 525, 888 N.W.2d 816.  As a result, we substitute "abuse of discretion" with "erroneous exercise of discretion." Both terms have an equivalent meaning. *Id.*

¶4      Based on Zach's young age, absence of a prior record, and predisposition cooperation, Zach's attorney filed a motion to dismiss and refer the matter for a DPA.[4]  In response, the State contended that a DPA was insufficient to serve Zach's needs or protect the public.  Along with the motion, the State filed an example of a DPA from another confidential case, a set of police reports, and a court report from St. Charles Youth and Family Services.

¶5      At the hearing on the motion, the defense argued that sparing Zach from a felony adjudication would expand his employment and educational opportunities and allow him to contribute positively to the community now and in the future.  The defense explained that Zach had done "exceptionally well" on predisposition supervision.[5]  Zach also had been meeting with a mentor, was set to start a learning program, and with the help of his mother, was going to start his own business.  Defense counsel further indicated that Zach had recently lost a close family friend due to reckless driving, which had a "huge impact on the way that he looks at things and looks at his past behavior[.]"  The Human Services Worker (HSW) supported the DPA given that Zach had done "very well" predisposition and there were no concerns at home.

¶6      The State argued that "[t]he community is crying out for courts to do something about [reckless driving], and I don't think that a DPA sends a message that courts are doing anything about it."  The State expressed a concern that when

---

[4] Zach's counsel initially sought to proceed orally.  The State objected, and the trial court ordered that the motion be made in writing.

[5] Zach was under predisposition GPS monitoring and had three hundred and five GPS tracks with only three violations, two of which were for dead batteries and one that he was with his mom leaving a family birthday party late.

a juvenile has a reckless driving case dismissed for a DPA, it encourages the juvenile to continue driving recklessly and flee from the police. The State also contended that the fleeing in this case was "exceptionally aggravated," though the State had seen "worse." The State then indicated that this was an "average fleeing," but still dangerous. The State played the squad camera video. The State noted one point where Zach was speeding in the oncoming lane of traffic with his lights off and nearly collided with about half of a dozen other cars.

¶7 The State additionally pointed to a DPA from another confidential case, in which the length of the DPA was two weeks. The HSW stated that this was not typical in her opinion, and the shortest DPA she had seen was six months. She indicated that it was possible the juvenile had already completed counselling or community service.

¶8 The defense indicated that there was no dispute that Zach engaged in reckless driving. The defense argued that this was an "average" fleeing, but what made Zach different was that this was his first offense, he did not have any negative behavior since the offense, and he, along with his family, had taken steps to make sure there was not a repeat of his behavior.

¶9 The trial court discussed the nature of the offense. The court noted that the offense occurred when people were coming home from work, picking up kids from daycare, and getting dinner. The court stated that it was "common sense" that reckless driving could result in someone dying and Zach's behavior was "unacceptable." The court stated that the offense not only impacted the broader community, but damaging his mother's car impacted his family.

¶10 Next, the trial court discussed the best interests of Zach. The court indicated that it was "struggling" to determine whether a DPA would result in

Zach "adequately learn[ing] his lesson[.]" The court observed that Zach had recently lost a friend due to reckless driving, and was "somewhat persuaded by the activities that he's going to be involved in," which included a mentoring program and starting a business. The court also noted that Zach's mother was involved, he was motivated to work with the HSW, and had demonstrated compliance. The court also considered Zach's school attendance.

¶11 With respect to the best interest of the public, the trial court stated it was "really struggling." The court explained that it was "shocked" by Zach's conduct and the video was "really hard to watch." Although there was only one named victim in the petition, the court indicated it was considering the impact Zach's conduct would have had on all drivers present on the road.

¶12 The trial court stated that "on one hand I have a 14-year-old who's doing really well, who has a plan." On the other hand, the court acknowledged the State's argument that the community was "crying out … for more accountability." The court believed that the community wants "this behavior to stop." The court then stated that the dispositive question was whether it was "in the community interest for me to give this kid a chance[.]" Based on the favorable supervision reports, the involvement of Zach's mother, and the "lesson" taught to Zach when his friend died as a result of similar conduct, the court ultimately found that it was in Zach's best interest and the public's best interest to grant the defense's motion. The court therefore dismissed the case and referred the matter for a DPA.

¶13 The State now appeals. Additional relevant facts are referenced below.

## DISCUSSION

¶14    WISCONSIN STAT. § 938.21(7) provides that a court has discretion to dismiss a juvenile case and refer the matter for a deferred prosecution, if it is in "the best interests of the juvenile and the public[.]"  *See also* ***State v. Hezzie R.****,* 219 Wis. 2d 848, 874, 580 N.W.2d 660 (1998).

¶15    On appeal, we "defer to the discretionary decisions of [trial] court judges, who are in the best position to observe the facts and apply the law." ***State v. X.S.****,* 2022 WI 49, ¶53, 402 Wis. 2d 481, 976 N.W.2d 425.  We will not search the record to find reasons to overturn a trial court's decision, however, a trial court "must exercise their discretion within the bounds of reasonable decision-making." ***Id.***

¶16    In this case, the State concedes that the trial court applied the correct legal standard—the best interest of Zach and the best interest of the public.  In regards to the best interest of Zach, the trial court considered Zach's age, the recent loss of his friend, family support, supervision history, school attendance, participation in a mentoring program, and his interest in starting a business.  In regards to the best interest of the public, the trial court acknowledged the seriousness of the offense and the need for Zach to be held accountable.  However, based on the favorable supervision reports, Zach's family involvement, and the "lesson" taught to Zach when his friend died as a result of similar behavior, the court ultimately found that it was in the public's best interest to grant a DPA.

¶17    The State nonetheless contends that there was "no reasonable basis" for the trial court to find that it was in either the public's best interest or Zach's best interest to dismiss the case and refer it for a DPA.  We disagree.  The trial court specifically considered the State's arguments regarding the public's desire

for accountability and for reckless driving to stop. The court also considered the seriousness of the offense. A disagreement with how the court weighed and considered these facts is not a basis for reversal. *See generally **J.A.L. v. State***, 162 Wis. 2d 940, 960, 968, 471 N.W.2d 493 (1991) (holding that a disagreement with the trial court's weighing of statutory criteria was not a basis for reversal). We are not persuaded that the facts of this case are so "extreme" or "distinctly out of the ordinary" that the trial court's decision was unreasonable. *See **X.S.***, 402 Wis. 2d 481, ¶55.

¶18 In its argument, the State also suggests that WIS. STAT. § 938.21(7) provides "little guidance" for trial courts. The language of the statute, however, is plain. A trial court "may" dismiss a petition and refer the matter for a DPA if it "determines that the best interests of the juvenile and the public are served" by such an order. Sec. 938.21(7). If the legislature wished to require the consideration of additional factors or exempt specific offenses from eligibility, it would have done so.

¶19 Relatedly, the State contends that the "limited case law relating to Dismissal/DPA Motions suggests that it is rarely (if ever) used in cases of intense public interest." Not only is this speculation, but, as stated above, the statute does not provide any limitation regarding what type of offenses are eligible for a DPA and we will not read one in. *State v. **A.L.***, 2019 WI 20, ¶20, 385 Wis. 2d 612, 923 N.W.2d 827 (stating that we do not read limiting language into a statute). Here, the trial court examined the relevant evidence, analyzed the proper factors, articulated its reasoning, and reasonably granted Zach's motion.

¶20     Lastly, to the extent that the State is unhappy with the functioning of the DPA program or believes that there should be more stringent statutory requirements, this court is not the proper forum to address this complaint.

¶21     Therefore, for the reasons above, we reject the State's arguments and affirm.[6]

            *By the Court.*—Order affirmed.

            This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] We note that the State's initial brief also discusses WIS. STAT. § 938.01, which sets forth the legislative intent of Wisconsin's Juvenile Justice Code.  In response, Zach addresses each part of the statute in detail.  In reply, the State clarifies that its discussion of § 938.01 was "simply to point out that the 'best interest of the public' was not so broad as it sounds.  The legislature provided an extensive list of the goals for Wisconsin's Juvenile Justice System and those goals are completely in harmony with the State's position in this appeal."  Given this clarification and the State's failure to specifically respond to Zach's arguments, thereby conceding them, we do not address § 938.01 further.  *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding that an appellant's failure to respond in a reply brief to an argument made in the respondent's brief may be taken as a concession).