COURT OF APPEALS
DECISION
DATED AND FILED

May 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1108**

Cir. Ct. No. 2023JV36

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN THE INTEREST OF J.A.N., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-APPELLANT,

V.

J.A.N.,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: NIDHI KASHYAP, Judge. *Affirmed.*

¶1 DONALD, P.J.[1] The State appeals from an order dismissing a delinquency petition filed against J.A.N. (hereinafter James)[2] and referring the matter for a deferred prosecution agreement (DPA). The State contends that the trial court erroneously exercised its discretion.[3] For the reasons discussed below, we reject the State's argument and affirm.

## BACKGROUND

¶2 On January 9, 2023, the State filed a delinquency petition charging James with one count of possession of a dangerous weapon by a person under eighteen. According to the petition, on January 7, 2023, police were dispatched to a Walmart in the City of Greenfield based on a report of an argument between two groups of people in the store. S.O., the employee who reported the incident, stated that she saw a tan firearm in the waistband of one of the individuals, later identified as James.

¶3 One of the groups, which included James, left the store in a red SUV. Officers attempted to conduct a traffic stop. The SUV initially stopped, but then fled reaching speeds of over one-hundred miles per hour. The SUV eventually crashed into a parked car and the occupants in the SUV fled on foot. James was apprehended a short distance away and identified himself verbally

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, in lieu of using the initials J.A.N., we use the pseudonym "James."

[3] The State's brief argues that the trial court "abused its discretion." In 1992, our supreme court abandoned the phrase "abuse of discretion," and replaced it with "erroneous exercise of discretion." *Seifert v. Balink*, 2017 WI 2, ¶93 n.50, 372 Wis. 2d 525, 888 N.W.2d 816. As a result, we substitute "abuse of discretion" with "erroneous exercise of discretion." Both terms have an equivalent meaning. *Id.*

when taken into custody. James was not believed to be the driver. Inside the SUV, officers located a pistol that matched the description provided by S.O., one pound of marijuana in a blue backpack, two additional pistols, three cell phones, and a debit card with James' name.

¶4 Officers reviewed the Walmart security footage. On the video, the officers were not able to make out the gun observed by S.O.; however, James was observed fidgeting with his waistband in a manner which the officers believed was consistent with being armed.

¶5 James' counsel filed a motion requesting that the trial court dismiss the case and refer the matter for a DPA. The motion noted that James was sixteen at the time of the offense and it was his first and only offense. Subsequently, the State filed a response asserting that a DPA was insufficient to serve James' needs or protect the community. In the motion, the State included images from the Walmart surveillance video.

¶6 At the motion hearing on June 1, 2023, James' counsel argued that a DPA was appropriate because James had done "extremely well" on predisposition supervision and did not have any negative reports. James' counsel stated that if James did not successfully complete the DPA, he would face adult charges based on his age; however, James still wanted to pursue a DPA.

¶7 James' counsel did not dispute the facts set forth in the petition and stated that James was willing to take responsibility for what happened at Walmart. James' counsel, however, noted that he was not the driver of the car that fled and his contact with the juvenile system "support[ed] him changing his group of friends and associates." Counsel argued that a "clean record" would allow him to

have employment and other opportunities in the future and would incentivize continued good behavior in kids that appear before the courts.

¶8     The Human Services Worker (HSW) supported the DPA because James had done "very well" on predisposition supervision, did everything that he needed to do, and has "a really strong support system[.]"

¶9     The State argued that James did not engage with predisposition services "in any meaningful way." The State contended that dismissing the case would not hold James accountable and would not protect the community. The State noted that an individual other than James wore the blue backpack with the marijuana, but believed that James was "adjacent to that behavior."

¶10     The trial court began its remarks by noting that the surveillance image reflected that there was a small child present with the other group, which was "disturbing." The court stated that the State "made a really persuasive argument about how dangerous this type of behavior is. But then when I go back to the petition the only charge is a misdemeanor." The court stated that "[t]he circumstances of how this all went down certainly strike me as suspicious" and carrying a gun is a "huge deal" as it could have resulted in James getting shot and James was "lucky" to be alive.

¶11     In regards to James' best interest, the trial court focused on the fact that James would be going to adult court if he "mess[ed] up on the DPA[.]" The court noted James' age, his performance on supervision, and that James filled his time by taking care of his disabled mother. The court therefore found that it was in James' best interest to give him an opportunity to avoid an adjudication or conviction.

¶12    As to the best interest of the public, the trial court noted that if James was convicted, he would not be subject to a lifetime firearm ban. The court explained that this was relevant to its assessment of the need to protect the public. While the court agreed with the State that "showing somebody a firearm is an act of violence in and of itself[,]" the court observed that James was not the driver of the SUV and did not wear the backpack with the marijuana.

¶13    The trial court then found that it was in the public's best interest and James' best interest to grant the dismissal and refer the matter for a DPA. The court told James that this is his "final shot" and if he made a mistake, he was going to adult court before a different judge.

¶14    The State now appeals. Additional relevant facts are referenced below.

## DISCUSSION

¶15    WISCONSIN STAT. § 938.21(7) provides that a court has discretion to dismiss a juvenile case and refer the matter for a deferred prosecution, if it is in "the best interests of the juvenile and the public."

¶16    On appeal, we "defer to the discretionary decisions of [trial] court judges, who are in the best position to observe the facts and apply the law." *State v. X.S.*, 2022 WI 49, ¶53, 402 Wis. 2d 481, 976 N.W.2d 425. We will not search the record to find reasons to overturn a trial court's decision, however, a trial court "must exercise their discretion within the bounds of reasonable decision-making." *Id.*

¶17    The State concedes that the trial court applied the correct legal standard—the best interest of James and the best interest of the public. In regards

to whether a DPA would be in the best interest of James, the court found that James deserved a "chance." The court considered James' age, performance on supervision, and that he had a job. With respect to whether a DPA would be in the best interest of the public, the court considered that a conviction would not disqualify James from possessing a firearm, James was not the driver of the SUV that fled, and he was not wearing the backpack with the marijuana.

¶18 The State, however, contends that there was "no reasonable basis" for the trial court to find that it was in either the public's best interest or James' best interest to dismiss the case and refer it for a DPA. We disagree. Given James' lack of a prior juvenile history, his performance on supervision, James' family support, the HSW's support, and the fact that this was a single misdemeanor, we are not persuaded that this was an unreasonable decision. To the extent that the State believes the DPA program should function differently or that there should be more rigorous statutory requirements, this court is not the proper forum to address this complaint.

¶19 The State also contends that WIS. STAT. § 938.21(7) provides "little guidance" for trial courts. The statutory language, however, is plain. A trial court "may" dismiss a petition and refer the matter for a DPA if it "determines that the best interests of the juvenile and the public are served" by such an order. Sec. 938.21(7). If the legislature wished to require the consideration of additional factors or exclude specific offenses from eligibility, it would have done so.

¶20 In addition, the State contends that the "limited case law relating to Dismissal/DPA Motions suggests that it is rarely used in cases of intense public interest." Not only is this speculation, but, as stated above, the statute does not provide any limitation regarding what type of offenses are eligible for a DPA and

we will not read one in. ***State v. A.L.***, 2019 WI 20, ¶20, 385 Wis. 2d 612, 923 N.W.2d 827 (stating that we do not read limiting language into a statute).

¶21 Therefore, for the reasons above, we reject the State's arguments and affirm. The trial court properly examined the evidence, reviewed the correct factors, explained its reasoning, and reasonably granted James' motion.[4]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] We note that the State's initial brief also discusses WIS. STAT. § 938.01, which sets forth the legislative intent of Wisconsin's Juvenile Justice Code. In response, James addresses each part of the statute in detail. In reply, the State clarifies that its discussion of § 938.01 was "simply to point out that the 'best interest of the public' was not so broad as it sounds. The legislature provided an extensive list of the goals for Wisconsin's Juvenile Justice System and those goals are completely in harmony with the State's position in this appeal." Given this clarification and the State's failure to specifically respond to James' arguments, thereby conceding them, we do not address § 938.01 further. ***United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding that an appellant's failure to respond in a reply brief to an argument made in the respondent's brief may be taken as a concession).